## Richmond.

Miller and Others v. Penniman and Bro. and Others.

March 10, 1910.

Absent, Buchanan, J.

1. Attorney and Client—*Defalcation of Agent—Loss of Funds—Case in Judgment.*—Pending a controversy between first and second class creditors over a fund a check for the fund was drawn payable to the counsel of said creditors, jointly. Each of the counsel endorsed the check and delivered it to one of the counsel for creditors of the second class with the understanding that he would place it in bank to their joint credit. He failed to do this, and appropriated the money to his own use, and only a part of it has been realized by the creditors of the first class since the controversy was decided in their favor. The question is who shall bear the loss, as between the creditors, of so much of the fund as has not been realized.

    *Held:* The whole check must be credited, as of its date, upon the claims of the first class creditors. Their counsel in endorsing and delivering the check to one of the counsel for creditors of the second class, with the agreement aforesaid, constituted him the agent of the parties endorsing the check, and the agent in collecting and misappropriating the proceeds of the check was acting for himself, and not for his clients. The second class creditors cannot be made to pay the penalty of misplaced confidence in the agent of the other counsel.

2. Equity Practice—*Attorney's Claim to Funds—Accounting—When Refused.*—After the funds in a cause have passed beyond the control of the court, and the cause is practically ready for a final decree, a court of equity will not, at the instance of the counsel for some of the parties (who has paid no attention to the case for years, and whose clients have been, in the meantime, represented by other counsel) order an account to ascertain what is due to him from his clients for services rendered in the cause.

Appeal from a decree of the Circuit Court of Franklin county. From an adverse decree the creditors of the first class and their

counsel, and T. W. Miller, who filed a petition in the cause, appeal.

*Affirmed.*

The opinion states the case.

*Scott, Buchanan & Cardwell, H. M. Altizer, P. H. Dillard* and *Thos. W. Miller,* for the appellants.

*S. & M. Griffin, L. W. Anderson,* and *Poindexter & Hopwood,* for the appellees.

HARRISON, J., delivered the opinion of the court.

On March 15, 1884, Marshall Waid conveyed certain real and personal estate to a trustee to secure his creditors. On April 14, 1884, two of the creditors of Waid, represented by R. E. Scott, attorney, obtained judgments against their debtor. On May 20, 1884, five judgments were obtained against Waid by other creditors, one represented by Messrs. Dillard and Dupuy, attorneys, and the remaining four by Messrs. Miller and Smith, attorneys. Upon the recovery of these judgments proceedings were had in which the deed made by Waid was held to be in fraud of his creditors and void, and the personal property thereby conveyed was subjected to the payment, in part, of the judgments mentioned, under an agreement between the several plaintiffs that they would act together and distribute the proceeds of the personal property *pro rata* among themselves, which was done. Shortly thereafter the present suit was brought by the Roanoke National Bank, a creditor of Waid, to enforce satisfaction of its judgment.

In this proceeding the real estate conveyed by Waid was ordered to be sold, and the proceeds distributed among his creditors whose liens were proven in the cause according to their priority. On June 2, 1893, the sale commissioner had in his hands for distribution the sum of $1,873.54. R. E. Scott, rep-

resenting the first class creditors, insisted that the whole of this sum was applicable to the judgments in favor of his clients, while T. W. Miller contended that the method of distribution agreed upon with respect to the personal property extended also to the proceeds of the real estate, and that the second class creditors represented by him were entitled to share with the first class creditors *pro rata.* Thereupon it was agreed between the parties that this question should be decided by Messrs. Dillard and Dupuy, and that all concerned would abide by that decision.

In the meantime the commissioner, for his own protection, gave his check for the $1,873.54, payable to all of the counsel representing the first and second classes of creditors, to be applied in accordance with the determination by Messrs. Dillard and Dupuy of the question at issue. This check was endorsed by each of the counsel and left in the hands of T. W. Miller, attorney, with the understanding that he would deposit it in bank to their joint credit until the right to its proceeds was determined.

Messrs. Dillard and Dupuy decided that the agreement with respect to the distribution of the proceeds of the personal property did not extend to the proceeds of the real estate, and that the whole proceeds of the check was applicable to the judgments represented by R. E. Scott, they being prior to all others. After this conclusion was reached, R. E. Scott found that T. W. Miller, instead of depositing the check, in acordance with their agreement, to their joint credit, had deposited the same to his individual credit, and had appropriated the proceeds to his personal use. The record shows that between December, 1893, and January, 1899, R. E. Scott succeeded in collecting from T. W. Miller $1,623.54 of this money, leaving in his hands a considerable sum that has never been paid.

Mr. Scott now contends that the judgments of the first class represented by him should not be credited with the check for $1,873.54 payable to Scott, Miller and Dillard, but should only

be credited with such part of the proceeds of that check as he had succeeded in collecting from Miller.

On the other hand it is contended, on behalf of the second class creditors, that the whole of the check in question must be credited, as of its date, upon the claims of the first class creditors.

This was the first question submitted for decision, and the circuit court properly held in accordance with the contention of counsel representing the second class creditors. The check was made payable to Scott, Miller and Dillard, so that each of said attorneys might be in a position to protect his interest, if any, in the proceeds. No part of this check could have been collected by Miller without Scott's endorsement and consent. Mr. Scott, in endorsing the check and delivering it to Miller thereby made the latter his agent to place the money in bank to the joint credit of Scott, Miller and Dillard until the question of the terms of the agreement mentioned could be determined, and Miller, in placing the check to his individual credit, and appropriating the proceeds to his own use, was acting for himself, and not for his clients. Clearly the second class creditors should not be made to pay the penalty of Mr. Scott's misplaced confidence in Miller. Mr. Scott has very properly, as the record shows, satisfied his clients with respect to this matter, and he can now look only to T. W. Miller for his own satisfaction.

The second and only other question raised by the petition for appeal involves the right of T. W. Miller to have this cause referred to a commissioner to ascertain his compensation for alleged services to certain second class creditors.

The record shows that at the beginning of these proceedings T. W. Miller represented several of the second class creditors, and that he collected certain sums belonging to his clients. The record is silent as to the cause, but it shows that after these collections had been made the clients of Mr. Miller abandoned him as their counsel, and employed other counsel to collect their claims. It further appears that these new counsel have collected

from the court's commissioners very nearly, if not all, that is to be realized, and have paid the same over to their clients. Years after Mr. Miller's disappearance from the cause, and at the time it was about going into the hands of the court for practically its final disposition, he files a petition asking that his former clients be required to pay him a fee equal to one-half of their respective debts, and that the cause be referred to a commissioner to take certain accounts with respect to his claim. The circuit court declined to accede to this proposition, and dismissed the petition, holding that the claim set up by Mr. Miller was a matter between him and his clients that could not be adjudicated in this cause.

It is quite clear from the record that the fund due to the former clients of Mr. Miller had passed beyond the control of the court. The decree dismissing his petition, which is the decree appealed from, directs the commissioners to disburse the balance in their hands, if any, to the judgment creditors, the language, "if any," implying a doubt as to the existence of any residue. But be that as it may, Mr. Miller has stood by for years and allowed this cause to proceed without any attention on his part. His former clients long ago ceased to look to or depend upon him, and have since been represented by other counsel of their selection, through whom they have realized their rights. There is nothing in the record to suggest any merit whatsoever in the claim now asserted by Miller, but the contrary, and the court properly declined, at this late day, to refer the cause to a commissioner for its consideration.

The decree appealed from must be affirmed.

*Affirmed.*